Bayard v. United States                    11-CV-301-SM   2/7/12
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Serge E. Bayard

      v.                                Civil No. 11-cv-301-SM
                                        Opinion No. 2012 DNH 036
United States of America


                            O R D E R


      Petitioner was convicted by a jury of using an unauthorized

access device with the intent to defraud (18 U.S.C. § 1029(a)(2))

and aggravated identity theft (18 U.S.C. § 1028A).  He was

sentenced to three years in prison.  His conviction and sentence

were affirmed on direct appeal, and he now seeks relief pursuant

to the provisions of 28 U.S.C. § 2255.


      As a preliminary matter, the court notes that petitioner has

moved to amend his petition.  The government does not object and

has fully addressed each of the four claims advanced in that

amended petition.  Accordingly, the motion to amend (document no.

4) is granted.


      Petitioner assigns the following errors in support of his

amended petition.  First, he says the court erred in denying his

motion for judgment of acquittal and, relatedly, that his

appellate counsel provided ineffective representation to the

extent he failed to raise and brief that issue in his direct appeal. Next, he says his trial defense counsel provided ineffective assistance by failing to object to impeachment evidence on Fed. R. Evid. 608(b) grounds and, relatedly, that his appellate counsel likewise provided ineffective assistance when he also failed to challenge that evidence on similar grounds.

## Background

For several years petitioner resided with Dorothy Shovan, an elderly and increasingly ailing woman whom he befriended. He became, functionally if not formally, the woman's care-giver and companion, assuming responsibilities such as buying food and paying her bills. To allow Bayard to purchase household items and to pay her bills, Ms. Shovan authorized him to use her credit cards. In 2008, Shovan's health deteriorated substantially; she suffered from severe dementia and was hospitalized. On July 25, 2008, she died.

In August of 2008, Bank of America reissued one of Shovan's credit cards. Petitioner opened the letter containing the reissued card (which was addressed to the now deceased Shovan). He took possession of the card, activated it, and used it for his own benefit. He made several retail purchases and, "[i]n e-mail correspondence, [he] told a resort representative [in New

2

Zealand] that he wanted to pre-pay [for a vacation] using a credit card that belonged to his 'cousin,' who [petitioner] identified in a subsequent e-mail as Shovan." United States v. Bayard, 642 F.3d 59, 61 (1st Cir. 2011). Petitioner charged approximately $3,185.00 to Shovan's Bank of America account.

At trial, petitioner claimed, in general, that his use of the credit card was not "unauthorized," as he had Shovan's specific authorization to use her credit cards. Anticipating that defense, the prosecutor sought leave to introduce evidence showing that petitioner had applied for and obtained a different credit card, from J.P. Morgan Chase, in Shovan's name, at a time when she was unarguably incapacitated, and that he also used that card after she died. The prosecutor argued that the Chase card evidence was probative on the issues of petitioner's intent and absence of mistake relative to his use of the Bank of America credit card.

The court ruled that the probative value of that evidence, presented in the government's case-in-chief, was substantially outweighed by the risk of prejudice, but did not rule out admission of that evidence for a different purpose. After petitioner unequivocally testified under oath that he was

3

authorized to use all of Shovan's credit cards, the prosecutor sought to impeach him with the Chase card evidence.

Petitioner's counsel (petitioner represented himself until after trial began, and then asked stand-by counsel to assume the defense) objected on grounds that the Chase card activity amounted to propensity evidence (Fed. R. Evid. 404(b)), and its probative value was substantially outweighed by the risk of unfair prejudice (Fed. R. 403). The prosecutor countered that the Chase card evidence was now admissible under Fed. R. Evid. 608(b) to impeach petitioner's credibility with respect to his general claim of authorization. The court, after balancing probative value and prejudicial effect (Fed. R. Evid. 403), allowed the prosecutor to ask petitioner about the Chase card activity, but also offered petitioner a contemporaneous limiting instruction to the jury. Petitioner declined the limiting instruction — an entirely reasonable tactical decision.

During the trial, petitioner moved for judgment as a matter of law, in part on grounds that the evidence was insufficient to permit a beyond-a-reasonable-doubt finding that he "used" the Bank of America card to the extent necessary to support a

conviction.[1]  Petitioner asserted that, because he did not

"swipe" the card to pre-pay the New Zealand resort, he did not

"use" it within the meaning of the statute.  That motion was

denied, and appellate counsel did not pursue it on direct appeal

(nor did petitioner pursue it in his separately-filed pro se

appellate brief).  The court of appeals did not address that

specific argument because petitioner did not appeal the denial of

his motion for judgment of acquittal.  Bayard, 642 F.3d at 65,

n.6.


## Discussion

The petition rests principally upon claims of ineffective

assistance of appellate counsel.  To establish ineffective

appellate assistance, petitioner "must first show that his

counsel was objectively unreasonable."  Smith v. Robbins, 528

U.S. 259, 285 (2000).  That standard is difficult to meet

because, to be effective, "appellate counsel . . . need not (and

should not) raise every nonfrivolous claim, but rather may select

from among them in order to maximize the likelihood of success on

appeal."  Id. at 288.  And, even if a petitioner makes that

showing, he must still "show a reasonable probability that, but

---

[1]  Petitioner's local retail purchases using the card fell below the statutory threshold of $1,000 or more during any one-year period, 18 U.S.C. § 1029(a)(2).  The cost of the New Zealand vacation charged to the account, however, brought the total above the jurisdictional amount.

for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." Id. at 285.

Applying this variant of the ineffective assistance test (see Strickland v. Washington, 466 U.S. 668 (1984)), courts "presume that the result of the proceedings on appeal is reliable, and . . . require [petitioner] to prove the presumption incorrect in his particular case." Robbins, 528 U.S. at 287. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985). Although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim," the Supreme Court has made it clear that satisfying the first part of Strickland requires petitioner to show that the ignored issues were "clearly stronger than issues that counsel did present." Robbins, 528 U.S. at 288.

As noted, petitioner's motion for judgment of acquittal was premised in part on the argument that, because he did not physically "swipe" the credit card when he used it to pre-pay his New Zealand vacation bill, his "use" of the card did not come within the prohibitions described in 18 U.S.C. §§ 1029(a)(2) and

6

1028A(a)(1).[2]  That appellate counsel did not pursue that argument, choosing instead to challenge the jury instructions and evidentiary rulings of some consequence, was not objectively unreasonable.

Petitioner's trial claim that "use" of a credit card within the controlling statutes' meaning is limited to "swiping" was a non-starter.  Indeed, credit cards are commonly "used" without "swiping" the magnetic strip through a card reader — cards are surrendered for imprinting; account numbers and security codes are read from cards to merchants over the phone; and those same numbers are referenced when sending billing information over the internet.  In this case, petitioner told the New Zealand proprietor that he was going to use a credit card that belonged to his cousin to pay his bill, and subsequently he told the booking representative in New Zealand that he would be using a card in his "cousin's" name [i.e., Shovan's].  It was perfectly clear from the evidence that an amount well over the statutory threshold was then billed by the New Zealand resort to the

_____

[2]  Section 1029(a)(2) punishes "[w]hoever . . . knowingly and with the intent to defraud . . . uses one or more unauthorized access devices" while Section 1028A(a)(1) punishes "[w]hoever, during and in relation to [a violation of section 1029(a)(2), among others], knowingly . . . uses, without lawful authority, a means of identification of another person . . . ." (emphasis supplied).

7

account associated with the intercepted Bank of America credit card.

Petitioner intercepted Shovan's mail; took possession of her credit card without authority; activated the card without authority; told the New Zealand resort he was using Shovan's card; and charged his New Zealand vacation costs to Shovan's account. See Trial Transcript Day Three, A.M. Session, pp. 67-69. On that evidence, the jury could certainly find, beyond a reasonable doubt, that he "used" Shovan's credit card without authority. Appellate counsel's decision to leave the sufficiency of the evidence unchallenged hardly constituted objectively unreasonable representation.

Even if counsel was not free to select other issues to pursue in lieu of the sufficiency claim, still, petitioner has not shown prejudice. Had he raised the issue on appeal, the outcome would not have been different. The evidence presented was more than sufficient to support the jury's verdict on each count. And, petitioner's hoped-for legal construction of the term "use" as being strictly limited to "swipe" with respect to credit cards, is simply incorrect.

Petitioner also challenges the court's ruling on his trial motion for judgment of acquittal. That claim is without merit. And, because he did not raise it on appeal, it has been forfeited.

Finally, petitioner asserts ineffective assistance of trial and appellate counsel claims with respect to an evidentiary issue. He says his trial counsel and appellate counsel should have objected to and challenged evidence related to the Chase card that was used to impeach him. Specifically, he complains that his trial and appellate counsel did not explicitly invoke Fed. R. Evid. 608(b) when addressing the underlying evidentiary issue at trial and on appeal.

Trial counsel and appellate counsel raised and pursued that evidentiary issue — they did object to and did challenge the admissibility of the Chase card evidence, both at trial and on appeal. This court considered the issue at trial and exercised its discretion to allow limited cross-examination for impeachment purposes. That ruling was within the court's discretion. The appellate argument focused on a Rule 404(b) analysis, which the court of appeals referred to as "misguided," because Rule 608(b) provided the correct rule of decision. But the court of appeals did consider the issue, addressed it on the merits, correctly

9

applied the "abuse of discretion" standard of review, and affirmed the ruling below.

An argument invoking Rule 608(b), or its provisions, or related standards, would not, as petitioner suggests, have had any effect, and would not have led to a different result.  The Court of Appeals, after all, considered the substance of the admissibility issue, applied the correct Rule 608(b) standard, found no abuse of discretion, and held that admitting the impeaching Chase card evidence did not constitute prejudicial error entitling petitioner to any relief.

There was no ineffective assistance of counsel with respect to that issue — counsel, both at trial and on appeal, pursued the issue, but did not prevail on the merits.  Neither counsel acted in an objectively unreasonable manner and petitioner suffered no prejudice as a result of any alleged failure on counsel's part.

To the extent petitioner alludes to other possible claims in his petition, they are, largely for the reasons given in the government' response, without merit.

10

## Conclusion

The amended petition (document no. 21) is denied. The court declines to issue a certificate of appealability, but petitioner may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. See Rule 11, Federal Rules Governing Section 2255 Proceedings. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 7, 2012

cc: Serge E. Bayard, <u>pro</u> <u>se</u>
    Donald A. Feith, AUSA

11